Here, the District Court erred in applying the 2L1.2 enhancement under the then-mandatory guidelines. The District Court also erred in applying the aggravated felony enhancement because a California conviction under Section 10851 is not categorically a theft offense. For the first error, remand is necessary because the District Court erred under Booker in applying the enhancement under the mandatory guidelines. MS. NUGENT Yeah, well, you know, I wouldn't even waste your time arguing that. MS. KAYE Very well. With respect to the second error, the California conviction under 10851 is not categorically a theft offense. This Court several weeks ago recently established in Pennular that under 1101A43G that 10851 is not categorically a theft offense. And the reasoning behind that was that because California law has broad aiding and abetting liability, that that takes the activity that's punished by 10851 outside the generic definition. And the element of the generic definition that the Court focused on was the taking or exercise of control over property. Now, given that aiding and abetting liability under California law takes that statute out of a categorical match to that element, and Section 2L1.2, the Application Note 3, specifically references 1101A3's definition, then its category is overbought under the federal sentencing state guidelines. The government has noted that Application Note 5 seems to permit for all B1 offenses aiding and abetting liability, but this is simply internally inconsistent with Application Note 3. It can't be that Application Note 3, which specifically references 1101, can be reconciled with that. And of course, Application Note 3 is the more specific provision and should control in these circumstances. The second reason that 10851 is overbought is that the statute permits deprivations based on de minimis deprivations of property. And Navarez-Martinez, although it was a case that focused on a lack of intent in the statute, listed several hypothetical examples of the type of conduct considered outside the generic definition. One example was a son taking his car to a location that was authorized. Another example was a renter taking a rental vehicle beyond the date of the contract or to a different airport. And these are two examples that are also punished by 10851. The third example, I believe, is the valet example. And again, it would seem plausible that this would also be punished under 10851. And so for these two reasons, the broad aiding and abetting liability and the de minimis deprivations of property, these are the two reasons why 10851 is overbought for purposes of 2L1.2. With respect to the modified categorical approach, none of the documents submitted in this case unequivocally established that he was actually convicted of a generic offense. And the documents that were submitted are identical to the documents submitted in Pennular. And of course, in Pennular, this Court found that the charging documents and the abstract of judgment didn't establish that he had actually committed the taking of property or excessive control of property. And that was because aiding and abetting under California law doesn't have to be pleaded in the accusatory pleadings. And so it wasn't apparent from just reference to the charging papers whether he was actually convicted of being a principal. The difference is, of course, that this guideline explicitly allows for aiding and abetting. Correct. Application Note 5 explains that B1 includes aiding and abetting. And B1 includes five sections that do the four-level enhancement, eight-level, and 12-level. But Note 3 deals specifically with the aggravated felony, which is B1c. And without qualification — well, the only qualification in Application Note 3 is that it takes the meaning of the term as defined in 1101, except with regard to the date of the conviction, or without regard to the date of the conviction. There's no other qualifier. It's inconsistent that 1101, which defines a theft offense as one that doesn't include aiding and abetting under California law, it's inconsistent with Application Note 5. And to the extent that it's inconsistent or ambiguous, this Court should define it in favor of Mr. Vidal. It is ambiguous in that regard, and it is a more specific provision that is not qualified. And so the second reason would be that if there's a generic definition of aiding and abetting liability, it should take the federal definition, which has the four-factor test. And under California law, aiding and abetting, or the aider and abetter doesn't necessarily have to have the intent to commit the underlying offense. So California law, aiding and abetting, is broader than any sort of generic federal aiding and abetting. The government has pointed to Rodriguez-Rodriguez. However, the aiding and abetting discussion in that case is two sentences. It doesn't address Corona-Sanchez's characterization of California law, and it doesn't address any argument that federal aiding and abetting is narrower than California aiding and abetting. And so it shouldn't control this discussion. If there are no more questions, I'll reserve for one moment. I'll save your time. Okay. I'll hear from Mr. O'Haye. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. I'd like to get right to the last point the defense counsel left off on. Application Note 5 is not in any way inconsistent with the rest of this, with the rest of Guideline 2L1.2. There's nothing internally inconsistent about it. Yes, that Guideline says that the definition of aggravated felony, you look to 8 U.S.C. 1101, but then in the next breath, the Commission says we need to take into account aiding and abetting, conspiracy, and attempt. If you were to take defendant's approach, Application Note 5 would be given no meaning whatsoever. It would just be written out of the statute or out of the Guideline, and it is unambiguous. And in Rodriguez-Rodriguez, this Court was faced with the identical argument advanced by the federal defenders in this case, which is that California aiding and abetting liability is broader than the federal definition, and they rejected that argument. They followed the plain language of Application Note 5 and said that, in that case, I believe it was California Penal Code 450, non-burglary. The defendant erased the claim that he was just a lookout, and the Court said very unequivocally that this argument is precluded by Application Note 5. And I know that defense puts a big emphasis, or relies heavily on the en banc opinion of Corona-Sanchez. That opinion was decided under a 1998 version of the Guidelines that preceded this Application Note 5. Application Note 5 was part of the November 2001 amendment, and so for that reason, we believe that defense, their reliance on Corona-Sanchez is misplaced. And furthermore, I don't believe that there is a difference between the federal and the non-federal. Yes, the exact wording of the test, the operative test, may be different, but we cited, I know in a footnote of our brief, to CALGIC, which is the California Jury Instruction 3.01. This is a jury instruction that's applied by the California Superior Courts on a daily basis. And under the use notes, I would quote a short sentence here. Aiding and abetting the perpetrator of a specific intent crime requires that the aider and abetter share the specific intent of the perpetrator. And for that proposition, the jury instruction cites the California Supreme Court case of People v. Beeman at 35 CAL 3rd, specifically at page 560. And again, there, the California Supreme Court said very clearly that when the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime, the aider and abetter must share the specific intent of the perpetrator. Now, I know in the reply brief, the defense, they cited some case that says, well, maybe there's some suggestion in some cases that you don't actually have to share it. Well, we would say, one, that's directly at odds with the language of CALGIC, which like I said, the California Superior Courts are applying on a daily basis. It's at odds with the California Supreme Court here in Beeman. And maybe the third thing I would say is there might be, maybe some confusion, because I know that the defense cites a CALAP case, the Beeman, in Beeman, the California Supreme Court, after they said when you have a specific intent, the aider and abetter must share that specific intent. The very next sentence, they say, by share, we mean neither that the aider and abetter must be prepared to commit the offense by his or her own act, should the perpetrator fail to do so, nor that the aider and abetter must seek to share the fruits of the crime. Well, I think that's just as well true under Federal law. It's basically saying, you have, they're saying you have to share the specific intent of the underlying crime, but maybe you don't have to share the intent of what you want to do with the proceeds of the crime. That's an entirely different, different principle, but if the court is concerned with whether or not California aiding and abetting liability doesn't mirror the Federal version, we would point, again, to this CALJIC 3.01 and the Supreme Court's, the California Supreme Court's interpretation of its own law in the Beeman case. And also, we would point out, if this court were to adopt a defense position, it would, in effect, require the court to overrule this Ninth Circuit's prior decision in Rodriguez, Rodriguez. Because, again, that was the same argument was advanced in that case, and it was rejected. Now, aside from the aiding and abetting, moving to the other argument, which is this whole temporary versus permanent deprivation, there are a number of flaws, I believe, in the defense's position on that subject, Your Honors. And first and foremost, defense, they rely most heavily on the model penal code. The en banc court in Corona-Sanchez rejected the model penal code's definition. So basically, what the defense would have this court do is to, even though the en banc court said, we are not going to follow wholesale model penal code, defense wants you to sort of incorporate bits and pieces of it that help it in this case. But that's something I don't believe that this court could do. In Corona-Sanchez, the en banc court clearly stated that the intent may be something less than permanent, i.e., it may be temporary. What the defense wants to do is to split hairs and say, well, there can be temporary, there can be de minimis. I mean, a number of responses. First off, the whole point of the Taylor categorical approach is not to get too deeply or at all into the facts of the underlying crime. The definition that they propose, which is based from the model penal code's use of the word deprived, I think it requires sort of the deprivation of a substantial portion of a property's economic value. I don't know how that's a practically workable standard, Your Honors. I don't know that they're in the plea call quiz for the California Superior Court that that was anything that they ever even asked people. In order to adjudicate that kind of a concept, you will have to go too deep into the facts, and that's something that Taylor precludes. Also, we would point out that I know that defense counsel referred to Navarro's Martinez, and she cited the hypotheticals about the rental car, the valet. Well, this Court, in the context of that discussion, was discussing an Arizona statute that had no intent requirement whatsoever. And the Court said, in such a situation where no intent is required, you can have these situations. This statute, Vehicle Code 10A51A, couldn't be more different because it specifically has a criminal intent requirement in it, and it's the intent to deprive of either title or possession. So in this case, with this statute, you don't have those kinds of concerns. And to the extent anybody could be convicted under the statute of that, I would say that's more of a problem with the underlying conviction. And of course, this Court doesn't stand in these collateral attack cases to judge the validity of the underlying conviction. If somebody's convicted on those set of facts under this statute, that's something they need to take up with the California Court of Appeal. But when we apply the framework that's necessary in this case, which is the Taylor categorical approach, we match up the elements of the generic definition of a theft defense with the statutory elements of the crime. Here, Cronus Sanchez says there needs to be an intent to deprive of the benefits of ownership, even if it's less than permanent. What does Vehicle Code 10A51 say? The intent to deprive of either title or possession. And I know another point I want to address, I believe in the reply brief, the defense states something that, well, to just interfere with possession, that's somehow not significant enough. I point out possession is, if ownership is considered a bundle of rights, possession is the most important part of that. Possession, I mean, what is it to own something if not to be able to possess it? So I don't believe that that kind of a distinction that the defense wants to draw is sustainable. And finally, Your Honors, if you were to adopt the position of the defense in this case, I don't know that any California statute could ever satisfy Taylor's categorical approach, because we don't quarrel with the defense. They're right. Aiding and abetting, it can be implied in every California complaint, just like it's implied in every federal indictment. And that's under 18 United States Code Section 2. If that were the case, and if aiding and abetting liability is so abhorrent under the state system, then you would never have any categorical satisfaction of Taylor. And it's hard to believe that that was Congress's intent. And not only that, it's empirically disproved. There are other cases that I cited in my brief where a number of California statutes have been held to satisfy the categorical definition of either a crime of violence or a drug trafficking offense. So I don't know what the defense response to that would be, but that's sort of a policy argument. And with that, unless the Court has any further questions or any questions, I guess I would submit. Go ahead, ma'am. I don't think so. Thank you. Application Note 5 deals with B1, which has five sections. And we're talking about Section C. To the extent that Section C takes precedent over Application Note 5, it doesn't render that Application Note meaningless. That Application Note could still apply to Sections A, B, D, and E. It is just internally inconsistent with Section C, which states that aggravated felony should have the meaning as the term is defined in 1101. And this Court has established under 1101, aiding and abetting liability under California law takes certain statutes outside the categorical definition of theft offense. With respect to the aiding and abetting definition in California law, Corona Sanchez and Pennular describe and characterize it as including mere promotion and instigation, which does fall outside the Federal definition. Why? The Federal definition is a four-factor test in which the aider and abetter has to have the intent to commit the underlying crime. And it appears from the aider and abetter that that is nothing to do with the point you were just making. I mean, why is the Federal statute allows for procuring, advising, counseling, helping, encouraging? That's correct. But in addition to that, there has to be the three other requirements in order to be able to do that. The Federal test is broader than California. Why? Because Well, okay. Well, that's fine. That is no problem. The Federal test is broader. It's no problem. Then I misspoke. I apologize. The Federal test requires assistance plus the specific intent to facilitate the crime plus the underlying, having the underlying intent to commit the substantive crime in addition to the fact that someone else commits the underlying crime. Under California, under the Beeman case, as cited in Pennular, it is that the aider and abetter act with the knowledge of the criminal purpose of the perpetrator and with intent of committing or, and I believe this is the difference, or simply encouraging or facilitating the commission of the offense. And so it does appear that acting with the intent of committing the offense is not required. And that takes it out of the definition of the Federal offense. Well, if that's true, then Beeman and the U.S. Supreme Court's approval of it is all wet. Well, that does appear to be how Pennular interprets the case as well as Corona-Sanchez. Rodriguez-Rodriguez doesn't discuss this at all. It doesn't discuss Corona-Sanchez. It's two sentences in the opinion. It doesn't reject or expressly discuss the argument that California law may be broader than Federal law. And it could be that California law is unclear on this point and whether it does fit the Federal definition or not. But the fact that certain cases seem to be broader or establish a broader test suggests that it can't categorically, that it is broader than the Federal definition or that it can't be relied upon. With respect to the argument that no California statute could ever satisfy any of those definitions of aggravated felony, that may be the case. It wasn't raised and doesn't appear to be raised or addressed in previous cases. In addition, there are five subsections to B1, crimes of violence, drug trafficking, and it's really unclear as to, even if this Court finds that for purposes of 2L1.1, that Pennular should, that that definition should control, doesn't necessarily invalidate those other sections or render aiding and abetting not applicable to those other, or applicable to those other sections. With respect to the less than total or permanent language of the categorical definition, that is, that is somewhat vague, but it must mean more than a de minimis deprivation. And again, although Navarro-Martinez involved the intent requirement, the California statute, regardless of the intent requirement. And with that, Your Honor, unless there are any more questions. Okay. Thank you, counsel. The matter just argued will be submitted and the Court will be in recess for the day. All rise.
judges: Browning, Magill, Rymer